UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Rico Contino

     v.                                     Civil No. 09-cv-065-PB

James O'Mara, Superintendent,
Hillsborough County House of
Corrections, et al.

## REPORT AND RECOMMENDATION

Before the Court is Rico Contino's complaint (document nos. 1 and 5)[1], filed pursuant to 42 U.S.C. § 1983, alleging that the defendants, all employees of the Hillsborough County House of Corrections ("HCHC") have violated his federal constitutional rights.[2]  As Contino is a prisoner proceeding pro se, the matter

---

[1]The originally filed complaint (document no. 1) and the motion to amend (document no. 5), which was docketed as an addendum to the complaint, will be considered, in the aggregate, as the complaint in this matter.  Contino has also filed a motion to amend (document no. 7), which is granted in my Order issued simultaneously with this Report and Recommendation.  Accordingly, the defendant previously identified as an unknown corrections officer may now be identified as Corrections Officer Guitierrez.

[2]In addition to O'Mara, Contino has named the following current and former HCHC employees as defendants to this action: Assistant Superintendent David Dionne, Dr. Charles Ward, Health Services Administrator Denise Ryan, Mental Health Counselors Dianne Barber and Christine Mellnick, and Corrections Officers Guitierrez and Adams.

is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted.  <u>See</u> 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d(2).[3]

<u>Standard of Review</u>

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520–21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  <u>See</u> <u>Castro v. United States</u>, 540 U.S. 375, 381 (2003) (noting that courts may

---

[3]Contino also requests, in his complaint, a preliminary injunction directing the defendants to provide him with his prescribed medication.  It appears that Contino is receiving most of his medication at this time.  If Contino feels his need for injunctive relief has persisted, he should file a separate motion for preliminary injunctive relief.

construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997).  All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>id.</u> This review ensures that pro se pleadings are given fair and meaningful consideration.

<u>Background</u>

Rico Contino was an inmate at the HCHC during the following periods of time: 04/30/2007 – 06/01/2007, 06/04/2007 – 06/12/2007, 08/06/2007 – 09/21/2007, 09/29/2007 – 10/09/2007, 12/13/2007 – 01/24/2008, 02/25/2008 – 03/11/2008, 07/07/2008 – 11/24/2008, and 02/07/2009 – 02/27/2009.[4]  During most of this time, Contino was incarcerated as a pretrial detainee, except 01/09/2008 – 01/24/2008, when he was serving a sentence.

<u>Facts Related to Medical and Mental Health Treatment at the HCHC</u>

Contino states that since 1995, he has been repeatedly and continuously diagnosed with serious mental illness by four different psychiatrists.  His diagnoses include psychotic disorder, anti-social personality disorder, generalized anxiety

---

[4]This action was filed on February 27, 2009.  It appears Contino remained incarcerated after that date.

disorder with panic attacks, moderate to severe depression, and bipolar disorder.  Since 1995, he has been prescribed and has taken daily psychotropic medications to treat these illnesses. Contino has also been hospitalized numerous times for suicidal and homicidal ideations, including a suicide attempt in August of 2004, and for alcohol detoxification.  Contino claims that the only times he has not taken medication, since 1995, are when he has been incarcerated and the medications were not made available to him.

In 2003, Contino was deemed to be totally and permanently disabled as a result of his mental illness and has, since then, received social security disability benefits.  Contino was recertified eligible for those benefits in March of 2008. Contino was also diagnosed with high blood pressure in 2005.

Contino states that when he first arrived at the HCHC, he advised the medical staff there about his medical and mental health conditions and the medications he was taking.  Contino states that he arrived at the HCHC with his medication for mental illness and hypertension so that the medications would be immediately available to him.  Contino signed authorizations on multiple occasions for the jail to obtain his medical and mental

health records from his doctors and from the hospitals where he had received in-patient treatment.  The jail received his medical records, but did not provide him with any of his previously prescribed medications until his February 2009 incarceration. The medical records attached to the complaint indicate that medical personnel at the HCHC were aware of Contino's medical and mental health diagnoses and treatment history, including his prior suicidality and hospitalizations.

Contino states that Dr. Charles Ward, the HCHC physician, refused to provide him with any of his medical or mental health medications.  Dr. Ward told Contino that "those types of medications are like sedatives," that "they don't work anyway," and that Contino "should stop living off the government and get a full-time job like normal people do."  Contino claims that Ward denied all of his medications based on his personal views of mental illness, rather than on Contino's actual medical and mental health needs.  As a result, Contino asserts, he was made to suffer greatly as the symptoms of his mental illness, frequent anxiety attacks, insomnia, extreme paranoia, hallucinations and delusions, grew increasingly worse during his incarceration.

Contino's medical records indicate that on July 8, 2008, Ward relied on a note from Contino's hospitalization records that stated Contino was "playing game" and the fact that Contino had allegedly referred to an imaginary friend during therapy, as his basis to "doubt M[ental] I[llness]" and cancel a prescription for Zoloft that the HCHC nurse practitioner had ordered for Contino.

When Contino returned to the HCHC on February 7, 2009, he again arrived with six bottles of prescription medication: Seroquel, which he took twice a day, Buspar, which he took four times a day, Zoloft, which he took once a day, Clonidine, a medication for his high blood pressure that he took twice a day, and Simvastatin, which he took once a day for high cholesterol. Contino alleges that the HCHC officials have refused to give him his medication as prescribed.  He is not being given his Seroquel at all and his Buspar dosage was improperly reduced.  While Contino receives his daily Zoloft and Simvastatin, his Clonidine was stopped entirely sometime in February of 2009 without explanation.  Contino reports that he is experiencing heightened mental illness symptoms from the failure to have his medication as prescribed by his treating mental health care providers, and he is concerned that his mental health and physical condition

will worsen.  Contino states that there are only three
psychiatrist appointments scheduled for inmates at the HCHC per
week, and that, as of March 27, 2009, there were approximately
fifty inmates on the waiting list ahead of him, which amounts,
approximately, to a four-month wait.

While at the HCHC, Contino requested to meet with HCHC
mental health counselors Dianne Barber and Christine Mellnick.
Contino repeatedly requested medications from them, but they
advised him to contact the doctor, as they were unable to
prescribe medication.  Contino states, however, that every time
he would request assistance from the medical department for help
with his mental illness, he would be referred back to counseling
with Barber or Mellnick.  Either Barber or Mellnick saw Contino
on July 8, 10 and 31, 2008, September 4, 2008, and October 8,
2008.  On those occasions, the mental health counselors talked
with Contino, noting his symptoms, and, often, his diagnoses and
his prior medications in Contino's records.  Additionally, the
HCHC Nurse Practitioner saw Contino on July 8, 2008 and August
29, 2008.

Facts Related to Contino's Medical Records

Contino, during his time at the HCHC, attempted to obtain a copy of his medical records from Assistant HCHC Superintendent David Dionne and HCHC Health Services Administrator Denise Ryan. Contino was told to send a request to HCHC Superintendent O'Mara who was in charge of medical record retention at the jail, which he did.  Eventually, Contino was provided with his records, although he was charged 50 cents per page for the copy he received, which, he claims, was excessive.

Facts Related to Dental Care at the HCHC

Contino states that while he was at the HCHC, he had daily tooth pain, and that he repeatedly requested dental care, but was only given ibuprofen for pain and put on a waiting list to see the dentist.  A single dentist makes one monthly visit to the HCHC to address all of the dental needs of all of the HCHC inmates.

On July 8, 2008, HCHC records indicate that Contino reported a toothache and was given ibuprofen.  On July 10, 2008, Contino requested an appointment with a dentist to treat his tooth pain and cavities.  Contino made additional requests for dental care

on July 14 and 15, 2008, August 4, 12, 13, 24, and 26, 2008, and
on September 2, 2008.

On September 11, 2008, Contino was seen by a dentist who
diagnosed Contino wtih moderate to advanced periodontic disease,
and observed that Contino had a tooth with "gross decay" and
necrosis.  Contino's necrotic tooth was pulled, and he was placed
on antibiotics.  The dentist directed that Contino be scheduled
for deep cleanings to address his periodontic disease.  The
dentist also told Contino to make a request for additional dental
work for multiple cavities that were not treated on September 11,
2008.  On September 30, 2008 and October 3, 2008, Contino
requested additional dental treatment, reporting that he had a
loose tooth with pain.  On October 17, 2008, the dentist again
saw Contino.  The dentist noted in Contino's file that another
tooth needed to be restored, but that Contino expressed that he
would prefer to have the tooth pulled.

Facts Related to Retaliation

In September of 2008, Contino asserts that, on one occasion,
HCHC Corrections Officer Guitierrez refused to open Contino's
cell door to allow him to have access to the nurse while she was
on his unit.  Corrections Officer Adams was then supposed to call

the nurse to return to the unit so that Contino could receive medication for his tooth pain.  Contino states that neither Guitierrez nor Adams ever called the nurse to get his pain medication.  Contino claims that Guitierrez and Adams were retaliating against him for filing an administrative grievance regarding the denial of prompt access to his medical records.

In addition to the September 2008 incident involving Guitierrez and Adams, Contino alleges other actions were taken against him in retaliation for his grievances regarding his medical records.  Contino claims that HCHC staff improperly opened and delayed his mail, including mail from the courts, denied him medication and medical records, and failed to return clothing sent to the laundry.  Contino states that since his return to the HCHC in February of 2009, retaliation against him has continued, as he has been denied his daily newspaper and has been placed in a high security classification.

<u>Discussion</u>

I.   <u>42 U.S.C. § 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional

or statutory law.  <u>See</u> 42 U.S.C. § 1983[5]; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (<u>overruled on other grounds by Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986)); <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his conduct must have caused the alleged constitutional or statutory deprivation.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 692 (1978); <u>Soto v. Flores</u>, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  As Contino's claims allege violations of federal constitutional law by state actors, they arise under § 1983.

II.  <u>Inadequate Medical and Mental Health Care</u>

Contino was a pretrial detainee at the HCHC during most of the time periods relevant to this action.  Detainees have a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free of punishment.  <u>See</u> <u>Surprenant v.</u>

---

[5]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997)).  The issue in evaluating claims by a pretrial detainee is ultimately whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment.  See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

The Eighth Amendment protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs.[6]  See Farmer v. Brennan, 511 U.S. 825, 831 (1994). To assert a viable cause of action for inadequate medical care, a prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical need. Id. at 831; Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle, 429 U.S. at 106.  The inmate must then allege that a responsible

---

[6]The Fourteenth Amendment is at least as protective of a pretrial detainee's right to medical and mental health care as the Eighth Amendment.  See United States v. Ayala Lopez, 327 F. Supp. 2d 138, 144 (D.P.R. 2004) (citing, inter alia, Fischer v. Winter, 564 F. Supp. 281, 298 (N.D. Cal. 1983) ("Since sentenced inmates may be held under conditions that are punitive, while pretrial inmates may not be, the courts have said that the due process clause affords greater protection to unsentenced inmates than the Eighth Amendment affords to the convicted.")).  As I find that Contino's claim is sufficient to meet the standard for an Eighth Amendment violation claim, I necessarily find that it is sufficient to allege a violation of the Fourteenth Amendment.

prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment.  See Estelle, 429 U.S. at 106.

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations.  See United States v. DeCologero, 821 F.2d 39, 42–43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy. Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care."  Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).  Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state.  Wilson v. Seiter, 501 U.S. 294, 302 (1991).

A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  See

13

Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003);
Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002)
(citing Farmer, 511 U.S. at 835–47); see also Gaudreault v.
Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious
medical need as one "that has been diagnosed by a physician as
mandating treatment, or one that is so obvious that even a lay
person would easily recognize the necessity for a doctor's
attention.") (internal citations omitted).

Fourteenth Amendment protections apply to a prison's
administration of medical care, including mental health care.
See DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991); see
also Torraco, 923 F.2d at 234 (recognizing that deliberate
indifference to an inmate's mental health needs violates the
Eighth Amendment).  Denial of dental care is also considered a
denial of medical care, which can constitute an Eighth Amendment
violation when prison authorities are deliberately indifferent to
a prisoner's serious dental needs.  See Estelle, 429 U.S. at 104;
see also Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989)
("'Dental care is one of the most important medical needs of
inmates.'" (quoting Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir.
1980))).  "Accordingly, the eighth amendment requires that

14

prisoners be provided with a system of ready access to adequate dental care." Hunt, 865 F.2d at 200; see also Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (cognizable claim regarding inadequate dental care can be based on various factors including pain suffered by plaintiff); Dean v. Coughlin, 623 F. Supp. 392, 399 (S.D.N.Y. 1985) (failure to provide routine dental care violates Eighth Amendment rights); Laaman v. Helgemoe, 437 F. Supp. 269, 313 (D.N.H. 1977) ("Inmates are entitled to reasonable dental care.").

Contino alleges that, during the entire time he was incarcerated at the HCHC, he repeatedly requested mental health attention and medication, hypertension medication, and dental care from HCHC personnel and did not receive it. Instead, his requests for help directed to Dr. Ward were met with derision, his requests for medication directed to the mental health counselors were simply referred to someone else, and his requests for dental care, while they eventually secured him an appointment, did not result in the prompt dental attention that his condition required. Further, Contino has demonstrated that HCHC personnel were aware of, and failed to provide adequate treatment for, Contino's mental health, medical and dental

problems.  As a result, Contino's well-documented and longstanding mental illness worsened, his physical health was placed in danger, and he lost one, if not more teeth that might have been saved.  Contino has alleged sufficient facts to state claims for inadequate medical, mental health, and dental care at the HCHC against Ward, and, in an Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"), I will direct service of these claims on Ward.

Contino has also attempted to state claims against mental health counselors Barber and Mellnick, and Health Services Administrator Ryan for their failure to secure adequate care for him.  Contino alleges that he repeatedly requested mental health help from these individuals.  Specifically, Contino states he advised them that he needed to be returned to his previous medication regimen, but that they were unable to prescribe medication, and could only refer him to Ward.  Contino had multiple counseling sessions with Barber and Mellnick.[7]  Contino

---

[7]Contino also asserts that Barber and Mellnick asked him more than once when he would be released.  Contino interpreted this question as an effort by Barber and Mellnick to delay his treatment until he was released so that the HCHC would not have to provide him with medication.  There is no support for this particular accusation other than Contino's personal suspicions.

was also seen by the HCHC Nurse Practitioner and by Ward.

Contino has failed to allege any action on the part of Barber,

Mellnick or Ryan that suffices to state a violation of his

constitutional rights, or otherwise gives rise to any claim

against these defendants upon which relief might be granted.   I

recommend, therefore, that Barber, Mellnick, and Ryan be

dismissed from this action.

As to defendants Guitierrez and Adams, Contino alleges that,

on a single occasion, he was prevented from receiving ibuprofen

for tooth pain by HCHC Corrections Officers Guitierrez and Adams.

Contino does not allege that he suffered significant harm from

this incident.  Further, Contino has failed to allege the kind of

deliberate indifference on the part of either officer that is

necessary to state a claim for a violation of his constitutional

right to medical or dental care.  Accordingly, I recommend that

Guitierrez and Adams be dismissed from this action.

III. <u>Supervisory Liability</u>

HCHC Superintendent James O'Mara and HCHC Assistant

Superintendent David Dionne serve a supervisory function at the

---

While I have to consider the facts alleged by Contino at this
stage of the proceedings to be true, I am not obligated to
likewise credit his unsupported suspicions.

HCHC.  Although there is no supervisory liability in § 1983
actions based on a respondeat superior theory of liability, <u>see</u>
<u>Bd. of County Comm'rs v. Brown</u>, 520 U.S. 397, 403 (1997); <u>City of</u>
<u>Canton v. Harris</u>, 489 U.S. 378, 385 (1989), a defendant
supervisor can be held liable based on the defendant's actual
notice of facts sufficient to render the official responsible for
reasonable inquiry into the complaint.  See <u>Feliciano v. DuBois</u>,
846 F. Supp. 1033, 1045 (D. Mass. 1994) (citing <u>Layne v. Vinzant</u>,
657 F.2d 468 (1st Cir. 1981)).  A supervisor also may be held
liable for his own acts, or omissions, if they rise to the level
of reckless or callous indifference to the constitutional rights
of others.  <u>See</u> <u>Febus-Rodriguez v. Betancourt-Lebron</u>, 14 F.3d 87,
91–92 (1st Cir. 1994).  Finally, a supervisor may be held liable
under § 1983 if he or she "formulates a policy or engages in a
practice that leads to a civil rights violation committed by
another." <u>Camilo-Robles v. Hoyos</u>, 151 F.3d 1, 7 (1st Cir. 1998).

   Defendants O'Mara and Dionne are each alleged to have been
aware of plaintiff's need for medical, mental health, and dental
care, and nevertheless failed to take any steps to ensure that
Contino would receive necessary care within a reasonable time.
Additionally, Contino claims that O'Mara and Dionne are proper

defendants to his medical, mental health and dental care claims because, as the administrators of the jail, they are responsible for establishing and enforcing the policies that resulted in the constitutional deprivations alleged.

As to his mental health care, Contino states that he was advised by an officer at the HCHC that the HCHC administration employed an unwritten policy of preferring to settle lawsuits when they arose than of expending the money necessary to properly treat and medicate mentally ill prisoners. This policy resulted in mentally ill people being treated by physicians and mental health counselors who were not psychiatrists and who did not have appropriate experience or training to treat the severely mentally ill. Further, it resulted in the deliberate deprivation of necessary medications for inmates while they were incarcerated at the HCHC. Regarding dental care, HCHC policies, for which O'Mara and Dionne were responsible, resulted in insufficient availability of dental professionals to treat the serious dental needs of HCHC inmates in a medically appropriate and timely fashion. Accordingly, in my Simultaneous Order, I will direct service of the inadequate medical, mental health, and dental care claims on O'Mara and Dionne in their supervisory capacities.

IV.   <u>Medical Records</u>

Contino alleges that he was denied his medical records for a period of time, and that he was then overcharged for those records, and that his right to meaningfully access the courts was thus violated.  In order to state a claim for a denial of access to the courts, however, Contino must allege that he suffered harm to specific litigation that he had, or would have, undertaken, by the denial of records.  See <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996) (to state a claim for denial of access to the courts, prisoner must demonstrate that prison officials' actions "hindered his efforts to pursue a legal claim" that he is constitutionally entitled to pursue during his incarceration). Contino has not identified any particular legal action or claim that was negatively impacted by the delay or expense involved in obtaining his medical records.  Accordingly, I recommend that this claim be dismissed.

V.   <u>Retaliation Claims</u>

Contino alleges that a number of actions were taken against him in retaliation for his grievances regarding his medical records.  The alleged retaliation included, among other things, problems with his laundry, mail, medications, and classification

status.  In order to state a claim for retaliation, an inmate must allege: (1) the conduct which led to the alleged retaliation was protected by the First Amendment, (2) some adverse action at the hands of the prison officials, and (3) a causal link between the exercise of the inmate's First Amendment rights and the adverse action.  See Price v. Wall, 428 F. Supp. 2d 52, 55 (D.R.I. 2006).  While Contino has alleged that he engaged in the constitutionally protected act of filing an administrative grievance at the HCHC, and has alleged some adverse actions were taken against him, he has failed to describe or demonstrate any facts which would indicate the existence of any causal link whatsoever between the adverse acts alleged and Contino's grievances to the HCHC administrative officials.  Accordingly, I cannot find that Contino has alleged sufficient facts to allow his retaliation claims to proceed, and I recommend that they be dismissed from this action.

VI.  Request for Court-Appointed Counsel

In his complaint, Contino has requested court-appointed counsel (document no. 5).  There is no absolute constitutional right to free legal representation in a civil case.  Bemis v. Kelley, 857 F.2d 14, 15 (1st Cir. 1988).  Rather, appointment of

counsel in a civil case is left to the discretion of the court.
See 28 U.S.C. § 1915(d); 42 U.S.C. § 3613(b).  An indigent
litigant must demonstrate that exceptional circumstances exist to
justify appointment of counsel, such that without counsel the
litigant most likely would be unable to obtain due process of the
law.  DesRosiers, 949 F.2d at 23; Cookish v. Cunningham, 787 F.2d
1, 2 (1st Cir. 1986) (per curiam).  In the case at hand, Contino
has, at this time, failed to establish the existence of such
circumstances.  Contino's motion for a court-appointed attorney
is therefore denied without prejudice to refiling in the future
should circumstances warrant.

<u>Conclusion</u>

For the foregoing reasons, I recommend dismissal of
Contino's claims alleging the denial of access to the courts and
retaliation.  I also recommend that defendants Barber, Mellnick,
Ryan, Guitierrez, and Adams be dismissed from this action.  In my
Simultaneous Order, I will direct that the claims alleging
inadequate medical, mental health, and dental care proceed
against defendants O'Mara, Dionne, and Ward.  Any objections to
this report and recommendation must be filed within ten (10) days
of receipt of this notice.  Failure to file objections within the

specified time waives the right to appeal the district court's

order.  See Unauthorized Practice of Law Comm. v. Gordon, 979

F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete,

792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date:     May 7, 2009

cc:       Rico A. Contino, pro se