UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Rico Contino</u>

     v.                          Case No. 09-cv-65-PB
                                 Opinion No. 2011 DNH 142
<u>Hillsborough County Dept.</u>
<u>Of Corrections, et al.</u>


<u>MEMORANDUM AND ORDER</u>

     Rico Contino brings this action pursuant to 43 U.S.C. §
1983 against Hillsborough County Department of Corrections
("HCDOC") Superintendent James M. O'Mara, Jr., HCDOC Assistant
Superintendent David Dionne, and Dr. Charles Ward to recover for
injuries sustained during his incarceration.  Contino alleges
that defendants failed to provide him with constitutionally
adequate treatment for a variety of health issues while he was
incarcerated at the Hillsborough County House of Corrections
("HCHC").  All defendants have moved for summary judgment. For
reasons discussed below, I grant defendants' motions.


I.   <u>PROCEDURAL HISTORY</u>

A.   <u>The Complaint</u>[1]

     Contino maintains he was incarcerated at the HCHC eight

_____

[1] Except where otherwise noted, I rely on the Magistrate Judge's
Report and Recommendation (Doc. No. 8) in describing Contino's
complaint.

times between April 30, 2007 and February 27, 2009, spending in excess of 300 days in jail.  During this time, Contino was incarcerated as a pretrial detainee, except between January 9, 2008 and January 24, 2008, when he was serving a sentence. Contino alleges that while he was incarcerated, he received inadequate psychiatric, hypertension, and dental treatment in violation of his federal constitutional rights.  He also asserts claims alleging denial of access to the courts and retaliation. In addition to O'Mara, Dionne, and Ward, Contino named as defendants Health Services Administrator Denise Ryan, Mental Health Counselors Dianne Barber and Christine Mellnick, and Corrections Officers Gutierrez and Adams.  The Magistrate Judge recommended that the claims alleging inadequate psychiatric, hypertension, and dental treatment proceed against defendants O'Mara, Dionne, and Ward, and that all other claims and defendants be dismissed (Doc. No. 8).  I approved the Magistrate Judge's recommendations (Doc. No. 14).

With respect to his claim that he received inadequate psychiatric care, Contino alleges that upon arriving at the HCHC in April 2007, he advised the medical staff about his mental health disorders and the medications he was prescribed.  He maintains that since 1995, he has been repeatedly and continuously diagnosed with serious mental illness by four different psychiatrists.  His diagnoses include psychotic

-2-

disorder, anti-social personality disorder, generalized anxiety disorder with panic attacks, moderate to severe depression, and bipolar disorder.  Since 1995, he has been prescribed and has taken psychotropic medications to treat these illnesses.  In 2003, Contino was deemed to be disabled as a result of his mental illness and has, since then, received social security disability benefits.

Contino alleges that each time he was incarcerated at the HCHC between April 2007 and February 2009, he either brought with him a number of current prescription medications for mental illness, including Seroquel, Buspar, and Zoloft, or requested that the HCHC staff verify his prescriptions with a pharmacy. Nonetheless, Contino did not receive the specific medications he requested until his February 2009 incarceration, and even then he did not receive Seroquel.  HCHC records attached to the complaint indicate that medical personnel at the HCHC were aware of Contino's prior psychiatric diagnoses and treatment history. Dr. Ward, who treated Contino during many of his periods of incarceration, allegedly denied all of Contino's previously prescribed psychotropic medications based on his personal views of mental illness, rather than Contino's actual mental health needs.  According to Contino, Dr. Ward told him that "those types of medications are like sedatives," that "they don't work anyway," and that Contino "should stop living off the government

-3-

and get a full-time job like normal people do."  As a result of allegedly inadequate psychiatric treatment, Contino asserts he suffered greatly as the symptoms of his mental illness, including frequent anxiety attacks, insomnia, extreme paranoia, hallucinations and delusions, grew increasingly worse during his incarceration.

Contino's second claim is that he was denied adequate medical treatment because the HCHC personnel refused to provide him with hypertension medication.  Contino maintains that in 2005, he was diagnosed with high blood pressure and prescribed Clonidine to treat the condition.  Although Contino informed the HCHC staff of his hypertension during a number of intake bookings, he alleges that he did not receive any blood pressure medication during most of the time he was incarcerated.  The HCHC medical staff finally prescribed Clonidine in February 2009, but discontinued the prescription later in the month without explanation.

With respect to his third claim, Contino alleges he received inadequate dental care during his incarceration. Contino states that while he was at the HCHC in the summer and fall of 2008, he made numerous requests for dental treatment for daily tooth pain.  He was given ibuprofen for pain and placed on a waiting list to see the dentist.  Despite repeated requests for dental care in July and August 2008, he did not see the

-4-

dentist until September 11, 2008.  According to Contino, the dentist diagnosed him with "moderate to advanced periodontic disease," extracted a tooth with "gross decay" and necrosis, and prescribed antibiotics.  The dentist saw Contino for another tooth extraction on October 17, 2008, after Contino made several requests for additional dental work for a painful loose tooth.  Contino alleges that the two extracted teeth could have been saved had he received earlier dental care.

**B.    Defendants' Motions for Summary Judgment**

HCDOC defendants O'Mara and Dionne have moved for summary judgment.  With respect to Contino's hypertension and dental care claims, they assert that he failed to exhaust the jail's administrative remedies, as required by the Prison Litigation Reform Act ("PLRA").  Defs. O'Mara & Dionne's Mot. for Summ. J., Doc. No. 47-1, at 5.  As for his psychiatric treatment claim, they contend Contino failed to produce any competent evidence to raise a genuine issue of material fact to controvert defendants' evidence that he received substantial mental health treatment at the jail.  Id. at 10-11.  Dr. Ward moved for summary judgment on the same grounds (Doc. No. 46-1) and joined in the motion filed by his co-defendants (Doc. No. 49).

Defendants have submitted admissible evidence establishing that administrative remedies exist at the HCHC, and that there is no record that Contino attempted to exhaust these remedies

with respect to his hypertension and dental treatment claims.
The HCDOC Inmate Handbook, given to each inmate upon arrival at
the HCHC, describes the facility's grievance procedures.  Aff.
of David Dionne ("Dionne Aff."), Doc. No. 47-2, ¶ 7.   The
administrative remedies available to Contino required that he
take three steps prior to commencing the instant action: (1)
attempt informal resolution, (2) file an inmate request form to
obtain an inmate grievance form, and (3) file the inmate
grievance form.   Id.  Each grievance form and the institutional
response are documented in the respective inmate file.  Id. ¶¶
7-8.

     Assistant Superintendent Dionne has asserted in a sworn
affidavit that he has reviewed Contino's inmate file, and that
Contino filed only one grievance regarding his health care
during the time relevant to this action.  Id. ¶ 8.  In the
grievance form, dated March 26, 2009, Contino complained that he
was denied two prescriptions for Seroquel, which a psychiatrist
had prescribed to him for psychosis before Contino was
incarcerated.  Id. ¶ 9.  Contino stated in the grievance form
that a nurse at the HCHC refused to prescribe him Seroquel
despite her acknowledgment that he arrived with current
prescriptions for the medication.  Id.  In response to the
grievance form, HCHC personnel noted that Contino was scheduled
to see a doctor to discuss his concerns and that no further

-6-

action was required.  Id. ¶¶ 10-11.  According to Dionne,
Contino did not submit any grievance forms or written complaints
related to either the allegedly inadequate hypertension
treatment or dental care.  Id. ¶ 16.

In his objection to defendants' motion for summary judgment
(Doc. No. 52), Contino does not claim that he exhausted the
administrative remedies available to him at the HCHC before he
filed this suit.  Instead, he alleges in an unsworn statement
that on unspecified occasions he requested a grievance form and
either never received it or was released from detention before
he could file the grievance.  See Pl.'s Mot. for Summ. J. & Mot.
to Object to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n to Summ.
J."), Doc. No. 52, ¶ S2.  He further alleges that the HCHC had
an unwritten policy of "dragging out" genuine complaints to
prevent the filing of grievances.  Id.  In addition, Contino
asserts that the PLRA does not require exhaustion in his case
because he filed this action following his release.  Id. ¶ Z2.

With respect to Contino's psychiatric treatment claim,
defendants contend that, although Contino did not necessarily
receive the medications he wanted, he received substantial
psychiatric care, including mental health counseling and
psychotropic medications at certain periods of his
incarceration.  On May 1, 2007, he was prescribed Tofranil, a
drug used to treat depression, and Risperidal, a mental health

-7-

medication.  Aff. of Denise Ryan ("Ryan Aff."), Doc. No. 47-4, ¶
9.  Both medications were discontinued approximately ten days
later.  Id.  During his incarceration in August 2007, he was
prescribed Zoloft from August 8, 2007 until August 29, 2007, and
again from July 8, 2008 until July 24, 2008.  Id. ¶¶ 17, 43, 47,
50.  From November 21, 2008 until his release on November 24,
2008, he was prescribed Celexa, Depakote, and Thorazine for
psychiatric treatment.  Id. ¶ 81.  When he was again
incarcerated on February 7, 2009, he was prescribed two of the
three psychotropic medications he requested, Buspar and Zoloft,
but again did not receive Seroquel.  Id. ¶ 86.  During times
such medications were discontinued, Contino continued to have
therapy sessions with mental health counselors at the jail.  See
id. ¶¶ 21, 51, 53, 56-57, 61-62, 68-69, 71-72.  Each time he
requested a mental health session, he either received counseling
shortly thereafter or was placed on a waiting list until an
appointment was available.  See id.

Defendants also contend that the reason Contino's treatment
did not include provision of his previously prescribed
medications was based on the medical opinion of his health care
providers at the HCHC.  Dr. Ward, Contino's main health provider
at the jail through November 28, 2008, was licensed to practice
medicine in New Hampshire until he retired in June 2010.  Aff.
of Charles Ward ("Ward Aff."), Doc. No. 46-3, ¶¶ 3, 7-9.  In a

sworn affidavit, Dr. Ward states that it was his medical opinion that Contino's major illness was his long-standing alcoholism and that his depression and anxiety were caused by incarceration and lack of access to alcohol.  Id. ¶ 21.  Dr. Ward doubted the accuracy of Contino's various psychiatric diagnoses and believed that a number of his medications were either unnecessary or contraindicated.  Id. ¶ 21.  As a result, on various occasions Dr. Ward discontinued Contino's psychotropic medications.  Id. ¶¶ 9-10, 13, 15-16, 18.  In Dr. Ward's medical judgment, Contino's multiple outside providers did not have the opportunity to provide adequate follow-up on the efficacy of their various treatments.  Id.  In addition to his own examinations, Dr. Ward relied in part on a report he reviewed on December 18, 2007 made by HCHC mental health counselor, who noted that Contino was "possibly manipulating to get meds," and a note from Contino's hospitalization records he reviewed on July 16, 2008, which stated that Contino was "playing games." Id. ¶¶ 15, 18.  Dr. Ward states that he attempted to treat what he considered to be Contino's underlying problem, alcoholism, and recommended that he attend Alcoholics Anonymous and avoid sedatives.  Id. ¶¶ 16, 21.

In responding to defendants' motion for summary judgment, Contino does not controvert defendants' evidence that he received substantial mental health treatment during his

incarceration.  Instead, he merely disagrees that the treatment he received was adequate.  See Pl.'s Opp'n to Summ. J., Doc. No. 52, ¶¶ A-Z.  He alleges, without citing to admissible evidence, that Dr. Ward and other HCHC medical staff were not qualified to discontinue or change psychotropic medications that outside psychologists and psychiatrists had prescribed to Contino.  Id. ¶¶ A-G. According to Contino, the failure to provide him with the medications he requested exacerbated the symptoms of his mental illness and caused him unnecessary suffering.  Id. ¶¶ A-Z.

## II.  **STANDARD OF REVIEW**

A summary judgment motion should be granted when the record reveals "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a

verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

In reviewing a pro se motion, this Court is obliged to construe the pleading liberally in favor of the pro se party. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). That review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

### III. ANALYSIS

### A. Failure to Exhaust Administrative Remedies

Defendants contend that Contino failed to exhaust the HCDOC three-step grievance procedure with respect to his claims that he was denied hypertension medication and received inadequate dental care.[2]  In response, Contino makes unsupported assertions that on certain unspecified occasions his requests for a grievance form were ignored and that requests being processed were discarded at times when he was released from jail.

---

[2] Defendants also argue in a footnote that the grievance form Contino submitted for psychiatric treatment failed to satisfy the PLRA, because it was filed after Contino commenced this action.  Because I find that Contino's psychiatric treatment claim fails on the merits, I do not need to address this issue.

Further, he alleges, again without citing to competent record evidence, that he was released from jail at the time he filed this action and therefore is exempt from the PLRA exhaustion requirement.

Under the PLRA, a prisoner asserting a claim under 42 U.S.C. § 1983 must exhaust all available administrative remedies before bringing an action in federal court.  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all inmate suits about prison life, even when, as here, the alleged violations relate to medical matters.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Acosta v. US Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006).  To properly satisfy the PLRA's exhaustion requirement, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."  Acosta, 445 F.3d at 512 (internal citation omitted).  Because failure to exhaust PLRA remedies is an affirmative defense, defendants bear the initial burden of showing that an inmate failed to exhaust.  See Casanova v. Dubois, 304 F.3d 75, 77-78 (1st Cir. 2002).  A prisoner's failure to exhaust available administrative remedies results in dismissal of the case.  Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

Defendants have established that administrative remedies were available to Contino during his incarceration.  Dionne Aff.

-12-

¶ 7.  Contino was required to take three steps prior to commencing this suit: (1) attempt informal resolution, (2) file an inmate request form, and (3) file an inmate grievance form. Id.  Assistant Superintendent Dionne states in a sworn affidavit that based on his review of Contino's inmate file, Contino never filed a grievance form for either inadequate hypertension treatment or dental care.  Id. ¶ 8.

Contino does not contest that he failed to exhaust the administrative remedies available to him at the HCHC with respect to these claims.  Instead, he merely responds with unsworn statements that during certain releases from the jail his previous requests were discarded, that on certain unspecified occasions his requests for a grievance form went unheeded, and that he was not incarcerated at the time he commenced this action.  I am not persuaded by Contino's arguments because he has not provided a sufficiently detailed account of events, sworn statements, or other admissible evidence to support his allegations and contravene defendants' evidence to the contrary.

Assuming, without deciding, that exhaustion would not be required had Contino filed suit at a time when he was not incarcerated, evidence submitted by defendants shows that Contino was incarcerated at the HCHC on February 27, 2009, the date he commenced this action.  In chronicling Contino's medical

-13-

records at the HCHC, Denise Ryan, Health Services Administrator at the jail, states that Contino was incarcerated on February 7, 2009 and remained there at least through June 9, 2009.  See Ryan Aff. ¶¶ 85-107.  Specifically, HCHC records indicate that on February 27, 2009, Contino attended mental health counseling at the facility.  Id. ¶ 93.  Other than his unsworn denial, Contino has not submitted any evidence to support his claim that he was not incarcerated at the HCHC when he filed suit.  Accordingly, I do not need to decide whether he needed to exhaust his administrative remedies if he were no longer incarcerated.[3]

Contino also suggests in his pleadings that his mental

---

[3] The fact that Contino was released and re-incarcerated a number of times does not impact the exhaustion requirement.  The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).  In light of the PLRA's plain and unambiguous language, the First Circuit has held that it is plaintiff's status as a "person incarcerated or detained" at the time he files suit that determines whether the exhaustion provision applies. Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002).  At least one federal appeals court has found that if an inmate is released from custody and then re-incarcerated at the same facility at the time the inmate files suit, he is required to exhaust the available grievance procedures before bringing claims arising out of the prior incarceration. Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004).  District courts in other jurisdictions have similarly held that an intervening release from custody does not excuse a failure to exhaust when plaintiff is imprisoned at the commencement of a lawsuit. See McCullough v. Yates, No. 1:10-cv-01465 LJO JLT (PC), 2011 WL 773233, at *2 (E.D. Cal. Feb. 28, 2011); Smedley v. Reid, No. 08cv1602 BTM (BLM), 2010 WL 391831, at *3-4 (S.D. Cal. Jan. 27, 2010); Gibson v. Brooks, 335 F.Supp.2d 325, 330 (D. Conn. 2004).

illness may have prevented him from following the grievance procedure.  He has failed, however, to produce any evidence to support his claim.  Moreover, records indicate that Contino followed the grievance procedure when HCHC personnel denied him Seroquel, a psychotropic medication he had requested.  Dionne Aff. ¶ 8.  The fact that he did request and submit a grievance form for one of his claims demonstrates that Contino knew about the grievance procedures and was able to comply with them.

Because Contino failed to file a grievance form for either the alleged denial of hypertension medication or inadequate dental treatment, he has not exhausted his administrative remedies.  Therefore, I grant defendants' motion for summary judgment with respect to those two claims.

**B.    Psychiatric Treatment Claim**

Contino also claims that the withholding and changes to his psychotropic medications at the HCHC amounts to a deliberate indifference to his serious mental health needs in violation of his federal constitutional rights.  Defendants contend that he received substantial mental health treatment at the HCHC and has failed to present any evidence to raise a genuine issue of material fact that the treatment he received was constitutionally inadequate.

Because Contino was a pretrial detainee for most of the periods of his incarceration, the Due Process Clause of the

-15-

Fourteenth Amendment governs his claim. Ruiz-Rosa v. Rullán, 485 F.3d 150, 155 (1st Cir. 2007); Surprenant v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005). "The Fourteenth Amendment provides at least as much protection for pretrial detainees as the Eighth Amendment provides for convicted inmates." Ruiz-Rosa, 485 F.3d at 155 (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). Courts have applied the same standard to prisoner medical claims brought under the Fourteenth and Eighth Amendments. Id.; Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002). That standard is whether the challenged official action constituted "deliberate indifference" to the prisoner's serious medical needs. Farmer v. Brennan, 511 U.S. 825, 828 (1994); Estelle, 429 U.S. at 104; Ramos v. Patnaude, 640 F.3d 485, 489 (1st Cir. 2011). The First Circuit Court of Appeals has recognized that prisoners' mental health needs warrant the same protection as their physical health needs because "there is no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (internal quotation omitted).

Deliberate indifference has two components. The objective component requires a showing of inadequate care for a sufficiently serious medical need. Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106. Adequate medical care is treatment by

-16-

qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community.  See United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, but simply that the care must meet minimal standards of adequacy.  See Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 162 (1st Cir. 2006).

The subjective component of deliberate indifference requires a showing of "sufficiently culpable state of mind," namely that a responsible prison official was aware of a substantial risk of serious harm to an inmate's health, or the facts from which the medical need could be inferred, and still failed to provide treatment.  Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106; Ramos, 640 F.3d at 489.  As Justice Souter explained in a recent First Circuit opinion, "[p]roof of deliberate indifference requires a showing of greater culpability than negligence but less than a purpose to do harm, . . . and it may consist of showing a conscious failure to provide medical services where they would be reasonably appropriate."  Coscia v. Town of Pembroke, No. 10-1714, 2011 WL 4068533, at *2 (1st Cir. Sept. 14, 2011) (internal citations omitted).

Courts hesitate to find that medical treatment was constitutionally inadequate where, as here, "the dispute concerns not the absence of help, but the choice of a certain course of treatment." Torraco, 923 F.2d at 234 (citing Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987)).  To constitute deliberate indifference, the treatment provided must be "so inadequate as to shock the conscience," Ramos, 640 F.3d at 489 (citing Sires, 834 F.2d at 13) or "so dangerous (in respect to health or safety) that a defendant's knowledge of a large risk can be inferred," Torraco, 923 F.2d at 235 (internal citation omitted).  "[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation." Ruiz-Rosa, 485 F.3d at 156; see Feeney, 464 F.3d at 162.

Contino claims that HCHC treatment providers' decisions to discontinue and alter his psychotropic medication regimen constituted deliberate indifference to his serious mental health needs.  He has not provided any evidence, however, to demonstrate that the treatment he received was constitutionally inadequate, nor has he controverted defendants' evidence that he received substantial mental health treatment.  Instead, he relies almost exclusively on the allegations contained in his complaint.  Such allegations, standing alone, fail to meet the

burden of proof imposed on the nonmoving party to produce evidence of a viable claim once the party seeking summary judgment identifies the absence of any genuine issue of material fact. Ruiz-Rosa, 485 F.3d at 156; Torraco, 923 F.2d at 235. As a party opposing a properly supported motion for summary judgment, Contino must present "competent evidence of record that shows a genuine issue for trial." Ruiz-Rosa, 485 F.3d at 156. He has failed to do so.

Contino offers no evidence that defendants' failure to provide him with the psychotropic medications he requested rendered the treatment he received "so inadequate as to shock the conscience." See Feeney, 464 F.3d at 162; Torraco, 923 F.2d at 235; Sires, 834 F.2d at 13. He was not entitled to the medications of his choice, even if those medications had been prescribed by outside providers. See Feeney, 464 F.3d at 162; Torraco, 923 F.2d at 235; Sires, 834 F.2d at 13. Further, defendants proffer evidence demonstrating that, although Contino did not always receive the medications he requested for his mental illness, he was given substantial mental health treatment. He received mental health counseling when requested, as well as different psychotropic medications at various periods of his incarceration.

The reason Contino's treatment providers at the HCHC discontinued and changed his previously prescribed medications

-19-

was not a result of their disregard of a known substantial risk of serious harm to Contino's health.  See Calderón-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002) (citing Farmer, 511 U.S. at 835-40).  Rather, the decision was based on Dr. Ward's disagreement with the diagnoses and courses of treatment that Contino received prior to his incarceration, a disagreement that reflects "an exercise of professional judgment [that] may present a colorable claim of negligence, but it falls short of alleging a constitutional violation."  Feeney, 464 F.3d at 162 (internal quotation omitted).  In Dr. Ward's medical opinion, Contino's underlying health problem was long-standing alcoholism, not mental illness.  Further, Dr. Ward concluded that Contino's multiple outside providers did not have the opportunity to evaluate the efficacy of their variety of treatments.  In absence of any evidence that Dr. Ward's diagnosis and treatment failed to meet minimum standards of adequacy, the fact that Contino disagrees with Dr. Ward's opinion is insufficient evidence of inadequate medical treatment.  See id.  A mere dispute over his course of treatment does not rise to the level of intentional or wanton indifference to Contino's mental health needs that is required under the Farmer standard.  See Torraco, 923 F.2d at 234; Sires, 834 F.2d at 13.

     I am not persuaded that a reasonable finder of fact could

-20-

conclude that the psychiatric treatment Contino received at the HCHC was "so inadequate as to shock the conscience." See Feeney, 464 F.3d at 162; Torraco, 923 F.2d at 235; Sires, 834 F.2d at 13. There is simply no evidence to permit a finding that Dr. Ward's treatment, even if negligent or substandard, violated Contino's constitutional rights. See Estelle, 429 U.S. at 104; Ruiz-Rosa, 485 F.3d at 156; Feeney, 464 F.3d at 162. Therefore, I grant defendants' motion for summary judgment with respect to Contino's psychiatric claim.

## IV.   CONCLUSION

For the reasons stated above, defendants' motions for summary judgment (Doc. Nos. 46 & 47) are granted. The clerk shall enter judgment in accordance with this Memorandum and Order and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

September 21, 2011

cc:  Rico Contino, pro se
     John A. Curran, Esq.
     Elizabeth L. Hurley, Esq.
     Jonathan A. Lax, Esq.